IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| INTEGRATED CONSTRUCTION, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10-2754-STA-dkv |
| ) | |
| NELSON INC, DSAD LLC, AND ) | |
| GREAT AMERICAN INSURANCE ) | |
| COMPANY ) | |
| ) | |
| Defendants. ) | |

_____

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court is Plaintiff Integrated Construction, LLC's ("Integrated") Motion for Summary Judgment (D.E. # 31), filed May 7, 2013.  On June 6, 2013, Defendant Nelson Inc. ("Nelson") filed a Motion for Extension of Time to File Response (D.E. # 32), asking the Court for leave to file a response by June 28, 2013.  The Court granted the requested leave in an Order (D.E. # 33) dated June 6, 2013.  On July 15, 2013, Nelson again asked the Court for an extension of time to file a response to Integrated's Motion for Summary Judgment, in a Motion for Extension of Time to File Response (D.E. # 34), this time to August 15, 2013.  Nelson also filed a Notice of Settlement as an attachment to this new motion.  The Court then entered an Order (D.E. # 35) directing the parties to inform the Court by August 5, 2013 whether they had settled.  On August 2, 2013, Integrated filed a Status Report (D.E. #36), indicating that the parties had not settled the case.  Nelson did not respond to the Court's Order or Integrated's Status Report.  The

1

Court then held a hearing on October 3, 2013 at which the Court granted Nelson fourteen days to file a Response to Integrated's Motion for Summary Judgment.  Nelson filed its Response in Opposition to the Motion for Summary Judgment (D.E. # 52) on October 17, 2013.  Integrated filed its Reply (D.E. # 66) on October 31, 2013.  For the reasons set forth below, the Court **GRANTS** Integrated's Motion for Summary Judgment.

## BACKGROUND

Except where noted, the Court finds the following facts undisputed for the purposes of summary judgment.

Nelson entered into Federal Contract Number W912EQ-09-C-0025 ("the Prime Contract") on July 31, 2009.  (Prime Contract, Pl.'s Exhibit 1, D.E. # 31-2; Award Letter, Pl.'s Exhibit 2, D.E. # 31-3.)  The Prime Contract required Nelson to perform a construction project for the United States Army Corps of Engineers ("Army Corps"), known as the Stone Dike Construction Project ("the Project").  (*Id.*)  The Prime Contract required Nelson to obtain a payment bond as a security for parties supplying labor, services, or material during the course of the Project.  (Prime Contract § 52.228-14.)  Nelson obtained a payment bond ("the Bond") in the penal sum of $9,241,900.00 from the surety Great American Insurance Company ("Great American").  (Payment Bond, Pl.'s Exhibit 14, D.E. # 31-15.)

On either August 21 or September 21, 2009, Nelson entered into a subcontract with DSAD, LLC ("DSAD") for the placement of 494,300 tons of stone at four locations in the Mississippi River for the building of stone dikes for the Project.[1]  (DSAD Subcontract, Pl.'s Ex.

---

[1] Integrated claims that DSAD and Nelson entered into the contract on August 21, 2009, as shown on the first page of the subcontract.  (DSAD Subcontract at 1, Pl.'s Ex. 4.)   Nelson disputes this fact and points to the signature page on the contract, which indicates that it was

2

4, D.E # 31-5.) On September 16, 2009, DSAD entered into a secondary subcontract with Integrated ("the Secondary Subcontract"). (Secondary Subcontract, Pl.'s Ex. 5, D.E. # 31-6.)[2] Under the terms of the Secondary Subcontract, Integrated agreed to furnish a crane and a barge and services for the Project.[3] (*Id.*) On September 17, 2009, Integrated started leasing and mobilizing the barge.[4] (Daily Log, Pl.'s Ex. 6, D.E. # 31-6; Tufaro Decl. ¶ 4, D.E. # 31-17.) On September 23, 2009, Integrated started mobilizing the crane to the project site. (Daily Log, Pl.'s Ex. 6; Tufaro Decl. ¶ 4.) From October 1, 2009 to November 5, 2009, Integrated worked on loading the barge.[5] (Daily Log, Pl.'s Ex. 6; Tufaro Decl ¶ 4.) On November 6, 2009, the Army

---

signed on September 21, 2009. (*Id.* at 5.) Therefore, this fact is disputed.

[2] Again, the Parties dispute the date of this subcontract. Nelson argues that the contract was signed on October 13, 2009. However, it cites to the subcontract which states on the first page that it was entered into on September 16, 2009. The signature page shows that the parties signed the contract on September 17, 2009. The Amendment to the subcontract was signed on October 13, 2009. Therefore, the Court takes this fact as undisputed for the purposes of summary judgment.

[3] Nelson marks this fact as disputed, arguing that "in addition to the equipment, it appears that this contract attempts to bind Integrated to provide expertise, personnel, tools, material, equipment, transportation and other services." The Secondary Subcontract does list these as obligations of Integrated; however, this does not contradict the fact that the Secondary Subcontract required Integrated to provide a barge, crane, and services. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[4] Nelson marks this fact as disputed, arguing that since the subcontract between DSAD and Nelson was signed on a later date, Integrated could not have begun work on this date. As noted above, it is disputed on what date Nelson and DSAD entered into the subcontract. However, Integrated's logs show that it began mobilizing the barges on that day and even if Nelson and DSAD signed the subcontract on a subsequent date, this does not render it impossible for Integrated to have begun work prior to that signing. As Nelson has cited no other evidence showing that Integrated did not being leasing and mobilizing the barges at this time, the Court takes this fact as undisputed.

[5] Nelson marks this fact as disputed but provides no citation to the record in support of its purported dispute. Local Rule 56.1 states, "[e]ach disputed fact must be supported by specific

Corps suspended all work on the Project through a verbal stop work order.[6] (Stop Work Order at 1, Pl.'s Ex. 7, D.E. # 31-8.) On November 9, 2009, the Army Corps issued a written Stop Work Order to Nelson.[7] (Stop Work Order, Pl.'s Ex. 7.) The Stop Work Order remained in effect until February 9, 2010. (Tufaro Decl. ¶¶ 5-6.) On February 9, 2010, the Army Corps terminated the Prime Contract with Nelson. (Notice of Termination, Pl.'s Ex. 9, D.E. # 31-10.)

By January 26, 2010, Integrated had not received any compensation for its efforts on the Project except for the initial deposit payments from DSAD and Nelson, which totaled a combined amount of $48,518.00. (Tufaro Decl. ¶ 7.) On January 26, 2010, Integrated notified Nelson and Great American that it had not been compensated and demanded payment in the amounts of $589,600.00 and $19,604.39 for labor and materials supplied to DSAD and Nelson. (Letter to Nelson, D.E. # 1-2; Letter from Great American, D.E. # 1-1; Tufaro Decl. ¶ 8.) Nelson denied Integrated's claim and did not pay Integrated. (Tufaro Decl. ¶ 8.)

On June 25, 2010, Integrated submitted an updated claim and supporting documentation for $686,492.00 to Nelson and Great American.[8] (Tufaro Decl. ¶ 10; Revised Claim, D.E. # 1-3.)

---

citation to the record." Therefore, the Court takes this fact as undisputed for the purposes of summary judgment.

[6] The Parties dispute whether the Army Corps issued the stop work order because the water levels were too high (Tufaro Decl. ¶ 5) or due to lack of production (Stop Work Order at 1). Because the Parties point to conflicting evidence, the Court finds that this fact is disputed.

[7] Nelson marks this fact as disputed, but cites to the same evidence as Integrated, the written Stop Work Order. Therefore, the Court takes this fact as undisputed for the purposes of summary judgment.

[8] Nelson marks this fact as disputed, but provides no citation to the record. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

4

Nelson did not pay any portion of Integrated's claim. (Tufaro Decl. ¶ 10.) Integrated then filed this suit on October 21, 2010.

Nelson filed a Notice of Appeal with the Armed Services Board of Contract Appeals ("ASBCA") on April 14, 2010 to challenge the termination of the Prime Contract. (Notice of Appeal, Def.'s Ex. 4, D.E. # 55-3; ASBCA Complaint, Pl.'s Ex. 8, D.E. # 31-9.) Nelson included in its pleadings before the ASBCA a certified Form 1436, which sets forth Nelson's calculation of its outstanding costs and expenses from the Project.[9] (Form 1436, Pl.'s Ex. 12, D.E. # 31-13.) It certified on the Form 1436 that Integrated was owed a total of $694,631.00, noting that Great American had paid Integrated $270,000.00.[10] (*Id.*) The Form 1436 also stated that Integrated was owed $424,631.00.[12] (*Id.*)

Nelson hired the federal contract consulting firm Kendall-Dinielli Consulting ("KD Consulting") to assist with the preparation of it calculation of the Form 1436. (KD's Claim Analysis Report, Pl.'s Ex. 13, D.E. # 31-14.) KD Consulting performed an audit analysis on the documentation that Integrated provided to Nelson and interviews it conducted of Joseph Tufaro, the owner of Integrated. (*Id.*) It concluded that Integrated was owed $ 694,631.00 for its efforts as a subcontractor on the Project. (*Id.*) Nelson adopted this recommendation when it certified

---

[9] It is unclear whether Nelson disputes this fact. Nelson appears to admit that it submitted a certified form, but argues that the total amount of the claim is not representative of what Nelson may owe Integrated. The Court will address this argument below. Since Nelson cites to the same Form 1436 as Integrated, the Court takes this fact as undisputed for purposes of summary judgment.

[10] Nelson disputes this fact, but provides no citation to the record. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[12] Nelson disputes this fact, but provides no citation to the record. Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

this figure in its ASBCA pleadings.[13]  (Form 1436, Pl.'s Ex. 12; KD's Claim Analysis Report, Pl.'s Ex. 13.)

In April 2011, Integrated Construction reached a settlement with Great American.[14] (Tufaro Decl. ¶ 13.)  Great American paid an advance settlement of $270,000.00 to Integrated and Integrated reserved its right to full compensation from Nelson and agreed to reimburse Great American once it received the full amount owed from Nelson.  (*Id.*)  Nelson participated in the settlement discussions, but did not sign the settlement agreement until June 2013.[15]

## STANDARD OF REVIEW

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]  In reviewing a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence[,]"[17] but instead must view the evidence in the light most favorable to the nonmoving party.[18]  When the movant supports its motion with documentary proof such as depositions and

---

[13] Nelson disputes this fact, but provides no citation to the record.  Therefore, the Court takes this fact as undisputed for purposes of summary judgment.

[14] The Parties dispute whether Nelson was a party to this settlement agreement.  However, Nelson appears to admit that there was at least a settlement agreement between Integrated and Great American.  Therefore, the Court takes this fact as undisputed and will discuss in detail whether Nelson was a party to this agreement below.

[15] (Transcript of Settlement Discussions, D.E. # 47-2; Settlement Agreement, D.E. # 47-1.)

[16] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[17] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[18] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[19] It is not sufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts."[20] These facts must constitute more than a scintilla of evidence, and must rise to the level that a reasonable juror could find by a preponderance of the evidence the nonmoving party is entitled to a verdict.[21] To determine whether it should grant summary judgment, the court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[22]

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[23]

## ANALYSIS

As a preliminary matter, the Court must determine whether Nelson is a party to the settlement agreement between Integrated and Great American. Nelson argues that it is a party to that agreement, which precludes Integrated from pursuing a claim against it. It appears that all three parties – Nelson, Integrated, and Great American – reached an agreement during settlement

---

[19] *Celotex*, 477 U.S. at 324.

[20] *Matsushita*, 475 U.S. at 586.

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[22] *Id.* at 251-52.

[23] *Celotex*, 477 U.S. at 322.

discussions in early April 2011.[24] However, when the Parties reduced the agreement to writing in May 2011, Nelson did not sign it along with Integrated and Great American.[25] According to Nelson's Response to the Court's Order directing the Parties to inform the Court whether they had settled, Nelson did not sign the agreement because Will Nelson, owner of Nelson, Inc., believed it expanded the scope of the verbal agreement.  Nelson did not sign the agreement until June 10, 2013, after Integrated had already filed its Motion for Summary Judgment.  Further, Integrated has provided the Court with emails sent between counsel for Nelson and counsel for Integrated in March 2013, in which counsel for Nelson unequivocally stated, "Mr. Nelson is not a party to the agreement between [Great American] and Integrated."[26]  Nelson has provided the Court with no evidence that it did not disavow the settlement agreement and, in fact, admits that it had problems with the agreement and therefore did not sign it in May 2011.  Nelson argues that it has pursued the claim before the ASBCA in compliance with the settlement agreement and that it signed the agreement in June 2013 to attempt to resolve this litigation.  However, Nelson cannot sign the agreement, after disavowing it, in order to gain its benefits and avoid a claim against it by Integrated.  Therefore, while the original settlement stated that Integrated would not pursue a claim against Nelson, because Nelson never signed it, Nelson cannot now reap the benefits of that agreement.

  Because Nelson is not a party to the settlement agreement and Integrated is entitled to pursue a claim against it, the Court now turns to the merits of Integrated's claim against Nelson

---

[24] (Transcript of Settlement Discussions, D.E. # 47-2.)

[25] (*See* Settlement Agreement, D.E. # 47-1.)

[26] (Brittenum Email, Pl.'s Status Report Ex. 4, D.E. # 36-4.)

under the Miller Act. The Miller Act, 40 U.S.C. section 270a et seq., requires "general contractors on federal construction sites to post payment bonds [which] allow individuals supplying labor or materials to a construction project to seek redress without filing a lien on the government facility."[27] A party who has dealt solely with a subcontractor may bring an action on the bond if the party gives "written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made."[28] The action against the contractor "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed."[29]

Nelson does not appear to dispute that Integrated provided Nelson with proper notice of its claim or that the claim stated the name of the party to whom the material was supplied. The evidence before the Court shows that Integrated provided Nelson with notice of its claim on January 26, 2010, which, since Integrated loaded the barge until November 2009, occurred within 90 days of the date the last supplies were furnished. Further, the claim stated that Integrated had furnished materials to DSAD and Nelson, thus naming the parties to whom supplies were furnished. Therefore, the Court finds that these two requirements for a Miller Act claim were satisfied.

---

[27] *S. Electric Health Fund v. Heritage Mutual Ins. Co.*, 147 Fed. App'x 497, 502 (6th Cir. 2005).

[28] 42 U.S.C. § 3133(b)(2); *S. Electric Health Fund*, 147 Fed. App'x at 502 ("[A] party whose exclusive dealings have been with a subcontractor [may also] seek compensation from the general contractor's bond, so long as proper notice is provided.").

[29] 42 U.S.C. § 3133(b)(2).

While its argument is unclear, Nelson does seem to dispute the amount of funds owed to Integrated by arguing that part of the sum comprises attorneys fees to which Integrated is not entitled. However, Nelson cites no authority to support its argument that Integrated cannot recover these attorneys fees and provides almost no citation to the record. Because Nelson certified in its ASBCA pleadings the amount claimed by Integrated and KD Consulting supported this figure based on its audits, the Court finds that Integrated stated the amount of the claim with substantial accuracy. Therefore, Integrated has satisfied all three requirements for a Miller Act claim. Because Nelson has not provided sufficient argument that Integrated is not entitled to the claimed amount, the Court finds that there are no genuine issues of material fact and that Integrated is entitled to summary judgment for the full amount of its Miller Act claim.

## CONCLUSION

Because Integrated has shown that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on its Miller Act claim, the Court hereby **GRANTS** Integrated's Motion.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 14, 2014.